Submitted on record and briefs December 9, 1991, affirmed February 12, 1992

In the Matter of Janet Marie Evjen,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

JANET MARIE EVJEN,
*Appellant.*

(9104-95799; CA A69666)

826 P2d 92

Ivan J. Vesely, Portland, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Katherine H. Waldo, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

Deits, J., specially concurring.

## DURHAM, J.

Appellant challenges a civil commitment order. ORS 426.130. On *de novo* review, *State v. Waites*, 71 Or App 366, 368, 692 P2d 654 (1984), we affirm the order on the ground that appellant is a "mentally ill person" because, due to a mental disorder, she is unable to provide for basic personal needs and is not receiving such care as is necessary for health and safety. ORS 426.130(1)(b); ORS 426.005(2)(b). There is no dispute but that appellant has a mental disorder.

■    Two examiners appointed under ORS 426.075(2) testified that appellant did not meet the criteria for commitment. The trial court reviewed those findings but rejected them and ordered commitment "on the basis of danger to others and unable to provide basic needs." ORS 426.130(1)(b)(C); ORS 426.005(2)(a)(b). Appellant claims that the court erred in rejecting the examiners' findings without an adequate explanation and in finding that appellant is a mentally ill person under the statute.

ORS 426.130(1) obliges the trial court to *review* the findings of the examining persons in the course of determining whether the person is mentally ill.[1] Nothing in the statute suggests that those findings bind the court or that the court must explain why it rejects those findings. The court met its review obligation in this case.

*State v. Waites, supra,* on which appellant relies, is distinguishable. In *Waites*, we declined to defer to a trial court's conclusion that Waites had a mental disorder. The trial court based its decision on his demeanor, but made no findings on his demeanor. We held that the trial court was not required to accept the experts' opinions, but should have given them more weight in that case. We did not hold that the

---

[1] ORS 426.130(1) provides, in part:

"(1) After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If, in the opinion of the court, the person is:

"* * * * *

"(b) Mentally ill based upon clear and convincing evidence, the court:

"* * * * *

"(C) May order commitment of the individual * * *."

trial court was required to explain why it rejected the examiners' reports.

■    The state must prove that appellant is a "mentally ill person," ORS 426.005(2), by clear and convincing evidence, ORS 426.130(b), meaning that the truth of the facts asserted is highly probable. *State v. Kerrigan*, 67 Or App 399, 401, 678 P2d 271 (1984).

■    Appellant has a history of chronic mental illness. She has been treated in mental hospitals sporadically since she was 13. This proceeding was initiated immediately after an altercation between appellant and her apartment owner, although the nature of the altercation is not clear from the record. Appellant was taken into custody because, 13 days before the court hearing, she allegedly tried to attack the owner of her apartment with a pair of scissors. One exhibit, an investigator's report, recited that appellant "attacked" her landlord but does not describe the attack. Appellant testified that she attacked the owner "verbally." The trial court file contains a police officer's report, which was never marked as an exhibit, offered or admitted in evidence, which states that appellant tried to attack her apartment owner with a pair of scissors, that she had been threatening other residents of the apartment and that she had not been taking her medication. Nothing in the record incorporates the police report into any exhibit. Neither the police officer, apartment manager, apartment owner, nor any resident was called as a witness. The trial judge made no written or oral findings about the incident, but his comments on the record suggest that he believed that appellant had attacked her apartment owner with scissors.

Appellant's case manager testified that she had supervised appellant for approximately a year and one-half. Although the manager did not testify about any specific incident in which appellant had been dangerous to others, she stated that "Janet is hostile and rather dangerous now," that she had been refusing to take some of her medications, that she "has a habit of going off her meds and getting psychotic," that she was abusing one of her drugs by "overdosing on it to get high, and she does have some history of doing that," and that she threw a tantrum and begged her caseworker for the particular drug on which appellant was overdosing. The

manager testified that "at this point she is very psychotic." The manager also criticized the plan that appellant proposed for her own care, stating that the proposed foster care home was an unstructured room and board 'home that did not provide resident supervision, was not licensed to dispense medication and made only sporadic reports to the manager when clients failed to take their medication. The manager also testified that appellant needs 24-hour supervision in a facility that would dispense her medication and that she would not receive adequate supervision at her proposed home. Appellant acknowledged that she is a "manic depressant" and that she takes multiple medications but claimed that she had only been forgetful about taking her medicine.

The medical examiners recommended against commitment on the basis of appellant's relative lucidity at the hearing, her resumption of medication after the altercation with the apartment owner and her stated willingness to continue taking her medication. Nonetheless, one examiner testified that it would be "better" if appellant had more supervision.

The trial court rejected the opinion of the medical examiners, because it did not believe that appellant had become stabilized simply because she had resumed taking her medication. We agree. Appellant has a history of mental illness, a habit of failing or refusing to take needed medication, which results in hostile, dangerous behavior, and a tendency to abuse drugs when they are administered without appropriate supervision. Appellant's case manager had far greater experience with appellant's problems than did the medical examiners. She supported involuntary commitment with persuasive testimony about the history of appellant's mental illness and the inadequacy of the alternative to civil commitment. We agree with the trial court that appellant is a mentally ill person within the meaning of ORS 426.005(2)(b).

However, we conclude that there is not clear and convincing evidence that appellant is "dangerous to * * * others." ORS 426.005(2)(a). The state's investigator generally opined in a report that appellant "is dangerous to herself in that she is unable to stay out of harm's way." The

evidence concerning appellant's altercation with her apartment owner is inconclusive regarding her dangerousness to others.

Affirmed.

**DEITS, J.,** specially concurring.

I agree with the majority's holding that appellant is a "mentally ill person," because she has a mental disorder and is unable to provide for her basic personal needs. ORS 426.005(2). However, I disagree with its conclusion that appellant is not a danger to others.

To support a finding that appellant poses a danger to others, the record must contain evidence that forms the "foundation for a prediction of future dangerousness." *State v. Lucas*, 31 Or App 947, 950, 571 P2d 1275 (1977). There clearly is such evidence here. As the majority acknowledges, appellant's case manager "had far greater experience with appellant's problems than did the medical examiners." The case manager testified that appellant's behavior may be controlled with medication but that she "has a habit of going off her meds and getting psychotic" and that she is currently "hostile and rather dangerous." The case manager also testified that appellant overdoses on one of her prescriptions in order to "get high."

In addition to the case worker's testimony, the record includes a police report describing an incident in which appellant threatened residents of her apartment complex and tried to attack the apartment manager with scissors.[1] The majority holds that the evidence of appellant's attack on the apartment manager is "inconclusive." I disagree. Even the medical examiners who recommended against appellant's commitment acknowledged that the incident occurred and that it showed that appellant was potentially dangerous to others:

"THE COURT: Would you concede, though, that threatening somebody with a pair of scissors is an act of dangerousness?

---

[1] The majority acknowledges that there was "an altercation between appellant and her apartment owner" but concludes that "the nature of the altercation is not clear from the record." 111 Or App at 371. It also notes that the police report "was never offered or admitted in evidence." However, the police report is included in State's Exhibit 1, which was admitted at the beginning of the proceeding.

"MR. MOHLER:   Yes, obviously. And probably she was much more psychotic when she did that. It was two weeks ago unmedicated. Her case manager hasn't spoken to her in a week. She's been on medication in two weeks and there's a big change, obviously."

In view of the record, the only possible basis on which to conclude that appellant is not dangerous to others is to conclude that her medication has stabilized her so that she can control her behavior. I do not think that the record supports that conclusion. As the majority says, "[a]ppellant has a history of mental illness, a habit of failing or refusing to take needed medication, which results in hostile, dangerous behavior, and a tendency to abuse drugs when they are administered without appropriate supervision." 111 Or App at 372. I believe that appellant poses a danger to others and that her history of abusing or neglecting her medication indicates that she remains one. I would not vacate that portion of the trial court's order that found appellant to be a danger to others.