Argued and submitted December 9, 1991, affirmed March 11, 1992

In the Matter of Steve Bunting,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## STEVE BUNTING,
*Appellant.*

(91-01-95164; CA A68501)

826 P2d 1060

E. Ted Meece, Portland, argued the cause for defendant. With him on the brief was Deich and Meece, Portland.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Defendant appeals from an involuntary commitment order. ORS 426.307(6). The trial court found that defendant is a person who, because of a mental disorder, is unable to provide for his basic personal needs and is not receiving the care necessary for his health or safety. ORS 426.005(2)(b). He concedes that he has a mental disorder. We review *de novo*, *State v. O'Neill*, 274 Or 59, 545 P2d 97 (1976), and affirm.

Defendant argues that the state failed to establish that his alleged inability to provide for his basic needs was a basis for commitment, because it was not an immediate life threatening condition. He relies on a passage in *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod* 102 Or App 509, 794 P2d 1257 (1990):

> "Basic needs are those things necessary to sustain life. Medical care for a life threatening condition can be a basic need. *See State v. Brooks*, 35 Or App 347, 581 P2d 134 (1978). However, on this record, appellant's failure to take lithium is not shown to be *immediately* threatening, even when coupled with irregular sleeping and eating. *See State v. Fletcher*, 60 Or App 623, 654 P2d 1121 (1982). The trial court's order cannot be affirmed on the basis of failure to meet basic needs." (Emphasis in original.)

The legislature's "basic needs" commitment standard focuses on the capacity of the individual to survive, either through his own resources or with the help of family or friends. The state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (*e.g.*, food and water) or service (*e.g.*, life-saving medical care) without which he cannot sustain life. The statute does not express a standard by which the imminence of the threat to life is to be measured.

A speculative threat, such as the failure to take medicine under the circumstances in *State v. Brungard*, is not by itself sufficient. However, the state need not postpone action until the individual is on the brink of death. The goal of the commitment statute is safe survival, not merely the avoidance of immediate death.

■ *State v. Brungard, supra,* 101 Or App at 73, construed another commitment statute, ORS 426.005(2)(c),[1] to incorporate the phrase "in the near future" as the measure of the imminence of the statutory condition authorizing commitment. We construe ORS 426.005(2)(b) to incorporate that standard, too. A person is subject to a "basic needs" commitment under ORS 426.005(2)(b) if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety.

■ The standard was met in this case. Defendant suffers from a bi-polar disorder and has been a patient in mental hospitals at least ten times in the last 13 years. Three weeks before the commitment hearing, he rode a bus from Portland to Vancouver, Washington, but forgot or could not decide why he did that. He returned to Portland and checked himself into a hospital. While there, he was agitated, confused and, at times, aggressive. The staff had to isolate him periodically to prevent odd behavior, such as rolling himself into a ball and removing all his clothes. He refused to eat, claiming without any factual basis that someone was poisoning the food. Doctors believed that defendant's medication was causing an organic problem that might be influencing his disorganized thinking and behavior but were unable to monitor his medication, because he was unable to communicate or cooperate due to his mental disorder.

---

[1] ORS 426.005(2)(c) provides:

" 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"* * * * *

"(c) A person who:

"(A) Is chronically mentally ill, as defined in ORS 426.495;

"(B) Within the previous three years, has twice been placed in a hospital or approved inpatient facility by the division under ORS 426.060;

"(C) Is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations or inpatient placements referred to in subparagraph (B) of this paragraph; and

"(D) Unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either or both paragraph (a) or (b) of this subsection."

On *de novo* review, we hold that defendant is a mentally ill person subject to commitment under ORS 426.005(2)(b).

Affirmed.